## In re Estate of William Lear.

**ATTORNEY AND CLIENT: Lien—Unauthorized Order.** An order establishing the heirship of persons to an estate and, without notice, decreeing a lien in favor of the attorney on the cash shares of certain heirs for whom the attorney has never appeared, is a nullity, in so far as the order establishing the lien and the amount thereof is concerned.

Headnote 1:   6 C. J. p. 795 (Anno.)

*Appeal from Hamilton District Court.*—B. R. Bryson, Judge.

April 5, 1927.

Rehearing Denied October 1, 1927.

Appeal from a supplemental order and decree in a probate proceeding, establishing and creating a lien for attorneys' fees against a fund in process of administration in the estate of William Lear, deceased. The opinion sufficiently states the facts.—*Reversed.*

*F. J. Lund* and *R. G. Remley,* for Charles Lehr *et al.,* appellants, and J. R. Kamrar, administrator.

*Martin & Alexander* and *John J. Dwyer,* for Diana Lehr Lurch *et al.*

*Burnstedt & Hemingway,* for administrator and the State.

DE GRAFF, J.—The instant appeal is from a supplemental order and decree in a proceeding in probate involving the estate of one William Lear, deceased. Lear, a bachelor, died intestate February 4, 1922, in Hamilton County, Iowa. He had no known heirs. He died possessed of considerable personal property, and subsequently to the appointment of an administrator, a controversy arose between different lines of claimants to the estate. Petitions were filed by the various claimants, and, on October 20, 1924, the cause proceeded to trial.

On December 16, 1924, the trial court entered its findings, to the effect that the claims in the petition known as the Diana Lehr Lurch petition should be established, and that a judgment entry in harmony with the findings should be prepared by John J. Dwyer and Martin & Alexander, attorneys for this line of claimants. On January 14, 1925, a judgment and decree so prepared was filed, which found and determined that the plaintiffs, Diana Lehr Lurch *et al.,* were entitled, in the distribution of the estate of William Lear, to an undivided six sevenths of said estate, and decreed that six sevenths of said estate belonged to said claimants absolutely, and dismissed the claims of all other petitioners, as unfounded and unsustained by the evidence.

It was further ordered, after providing for payment of costs and inheritance taxes, that:

"In making distribution of the funds and property due said claimants, the amount due shall be paid to the attorneys of record for said claimants, and the receipt of said attorneys for said amounts shall be a sufficient receipt for the closing of this estate as to the claimants represented by them, and shall constitute proper vouchers in settlement by the administrator."

At this point it may be observed that the appellants herein were not parties to the original action, nor were they represented by counsel. They are present, if at all, on the theory of virtual representation.

The record further discloses that, on April 29, 1925, the administrator filed his final report, in which are shown the disbursements made in conformity to the decree entered, and wherein it is further recited that:

"The heirship to the remaining one seventh of the estate had not been established or adjudicated by a decree of the court, and therefore we request that such kinship be first found and established by the court."

It is further recited in said report that the sum of $1,418.18, representing one seventh of the estate, to which the heirship was not established, was turned into the office of the clerk of the district court.

The administrator asked that the report be approved, the administrator discharged, and his bond exonerated. No order of this character was entered by the court; but, on April 30, 1925, the attorneys for the claimants named in the Diana Lehr Lurch petition filed their unverified petition to adjudicate heirship as to the one seventh of the estate of William Lear, and establish, by a decree, attorneys' fees in favor of the said attorneys. In this petition the said attorneys recite the work done by them in proving the identity of the heirs, the character of the original contest, and the result thereof, as defined by the terms and provisions of the decree entered, and it is further recited:

"That the heirs to said remaining one seventh, as shown by the testimony and proof adduced by said undersigned attorneys, are as follows: Charles Lehr, Hellerstown, Pennsylvania, nephew; Perman Lehr, Reading, Pennsylvania, nephew; Carrie Lehr Ehret, Mount Carmel, Pennsylvania, niece; and Lola Lehr Strawn, Bethlehem, Pennsylvania, niece; that said heirs are the children of Amos Lehr, deceased, brother of William Lehr, deceased; that each of said heirs is entitled to an undivided one twenty eighth of said estate; that the services of said attorneys in securing the proof of heirship and in presenting the same to this court was done with the knowledge of said heirs, and inured to their benefit; that said heirs stood by and permitted said services to be performed, knowing that the same would be to their advantage, and purposely refused to join with other heirs of their common ancestor in establishing their claims, in order to avoid their proportionate share of the expenses connected with the said proceedings; that a fee of 50 per cent of all the amount

due each of said heirs is a fair and reasonable compensation for said Martin & Alexander and John J. Dwyer, attorneys, for said services.''

The said petition prayed that the remaining one seventh of said estate be established as set forth in the petition; that the attorneys' fee of the undersigned attorneys be fixed and established; and that the amount so fixed be decreed to be a lien on the respective distributive shares. No notice of this petition was ever served on the alleged heirs named in the petition, or upon the administrator of the estate, or upon any attorney.

On the 13th day of May, 1925, an ex-parte supplemental order and decree adjudicating heirship and establishing attorneys' fee was entered in the probate court, and in said supplemental order it was determined that the four persons heretofore named were entitled, in equal shares, to a distributive share, as heirs in the estate of William Lear, deceased, to the remaining one seventh of the estate; that the attorneys were entitled to 50 per cent of the amount due each of said heirs, as compensation for the services of said attorneys in securing the proof of heirship and presenting the same to the court; and that said services were performed with the knowledge of said heirs and for their benefit. It was ordered that the clerk of the court pay to the attorneys the sum of $709.09, taking their receipt therefor, and hold the balance, of $709.09, until such time as said heirs should file a proper receipt therefor.

On the 24th day of July, 1925, a motion was filed on behalf of the four persons heretofore named as heirs, to set aside the supplemental order and decree of May 13, 1925, on the following grounds: (1) That there is no jurisdiction on the part of the court to enter said order, for the reason (a) that no notice whatever was served upon the movants of the filing of said petition for supplemental order or of the hearing of said order, and that the movants neither consented to nor appeared thereto, and were in no wise represented therein; (b) that said petition was not filed as required by law; (c) that said hearing involved a property right, and by said supplemental order entered as aforesaid, the movants were deprived thereof without notice, and without due process of law, and in violation of the Constitution of the state and of the United States. (2) That the records and files in the original case, and especially the decree entered January 15,

1925, show that the said attorneys were not acting for or on behalf of these movants, and that frequently the said attorneys asserted in open court that they did not appear for these movants, and stated in open court, as a reason for omitting the establishment of the kinship of these movants in said decree, that these movants refused to employ these attorneys, and that said attorneys would not represent the movants, and would do nothing in their behalf, but purposely prepared the decree with a specific design of omitting any benefits therein to these movants, and hence are not entitled to compensation for their alleged services. (3) That all of the services performed by said attorneys connected with the establishment of the heirship in said estate were performed under express written contract with other heirs of said estate, for which they received a sum equal to one half of the amount recovered for the heirs that were actually represented, including all expenses of said attorneys in and about the trial and investigation of said cause; and that said attorneys, up to and including the preparation and filing of the original decree, expected at no time to receive any compensation other than the compensation for which they had specifically bargained with the heirs they then represented, and for which they recovered over $4,500, or more than half of the amount recovered for said heirs. These are the primary grounds recited in the motion, which was duly served upon all adverse parties in interest.

On the 2d day of September, 1925, an amendment to said motion to set aside the supplemental order was filed on behalf of the movants, in which it is denied that the claimed services of said attorneys were rendered for and in behalf of said movants, but is asserted that said attorneys did act on behalf of other heirs, and that the said movants had no intimation that any such services were being rendered for and on their behalf, or that payment for said services would be demanded from them; that said movants had no knowledge of any services performed by said attorneys on their behalf, but that, on the other hand, the said attorneys refused to represent said movants in said proceedings, and that said attorneys, after refusing to represent said movants, later sought employment as attorneys for said movants, but were refused, because of the terms demanded for said services.

On the 4th day of September, 1925, a motion for continuance was filed by said attorneys, to which a resistance was filed by the movants. The motion to continue was sustained, and on the 8th day of September, 1925, a notice of appeal was filed by the said movants, and due notice thereof was given. This notice recites that Charles Lehr *et al.* "have appealed from the order of the district court rendered in favor of Martin & Alexander and John J. Dwyer * * * entitled Supplemental Order and Decree, adjudicating heirship and establishing attorneys' fee. * * * and also from the ruling of the court on a motion for a continuance. * * *"

It is sufficient to state that the motion to strike the supplemental order and decree was never ruled by the trial court, but that, subsequently to the appeal, to wit, October 20, 1925, it appears that the motion to set aside supplemental order came on for hearing, and at said time the court ruled that:

"It appearing to the court from the records and files in this case that Charles Lehr *et al.* have appealed from the orders and findings of this court, including the order just mentioned, and that notice of appeal has been served on opposing counsel and on the clerk of this court and now on file in this court; that this court has lost jurisdiction to hear and determine the matters raised by said motion; and that jurisdiction in this case has been transferred to the Supreme Court of Iowa, by said notice of appeal duly made and filed in this court."

It further appears that formal offer of proof to sustain the allegations of the motion was presented by the appellants, to which objection was made, and it was said at that time in open court by adverse counsel:

"There is nothing to try here. Everything is in the Supreme Court of Iowa."

Counsel for the movants did make a formal offer of evidence on behalf of the movants, and also on behalf of the administrator, who had filed motion challenging the supplemental order, subsequent to the taking of the appeal. The offer was objected to, and the objection was sustained by the court on the primary ground that "the court was without jurisdiction to determine anything in the case."

A cursory review of the abstract discloses that the record before us is not only in a peculiar, but in a precarious, condition.

These appellants were not, in fact, nominal parties in the original action. They were not, in fact, represented by counsel. It may be that the trial court in the first instance did not establish and adjudicate the one-seventh interest, for the reason that the persons entitled to the one-seventh interest were not before the court, or named in the Diana Lehr Lurch petition, and that the proof advanced was not sufficient to identify these parties by name, and their relationship to Amos Lehr, brother of William Lear, deceased.

It appears from appellants' amendment to abstract of record herein that William Lear had two sisters and five brothers. This explains the division of the estate fund into sevenths. One of these brothers was named Amos, who, at the time of the trial, was deceased, but left surviving him a widow and four children. Who the children were, or where they lived, if living, the original record did not disclose, so far as we are at the present moment advised.

May it be said that, if it be assumed that the four appellants are the living children of William Lear's brother Amos, deceased, they were in court on the theory of virtual representation? The original decree entered in this cause must be viewed as a finality. In order that a person not technically a party to a judgment may claim the judgment as having been the effect of *res judicata* in his favor, it is generally necessary that he should appear openly in the case, to the knowledge of the adverse party. 15 Ruling Case Law 1011. However, the six-sevenths interest was not strictly adverse to the one-seventh interest. A judgment is conclusive of the issues involved in a controversy, as between the parties and those standing in privity of them. It cannot be said, as between the heirs of a common ancestor, that the interests of one heir are necessarily adverse to those of another heir. There was, as between the brothers and sisters of William Lear and the heirs of any deceased brother or sister, a privity of estate. They all come in by succession to property under the statute of descent.

The trouble in the instant matter is that the evidence failed to disclose who these particular heirs (appellants herein) were, and the court, therefore, was not in a position to establish and decree the particular share in the one-seventh interest of the estate of William Lear. This was a question of proof. It is true

that the Diana Lehr Lurch petition attempted and intended to establish rights which were common to all of a class, but it was necessary that due proof be offered, to establish the claims of the respective claimants.

The original petition asserted rights or claims upon a particular fund then in existence and in the hands of an administrator. The original decree expressly determined the rights as to certain parties who had appeared in the action and made due proof. A supplemental decree was necessary.

The question is, Did the attorneys who represented the claimants to the six-sevenths interest, which was established, have the right to secure a supplemental decree *ex parte,* establishing the one-seventh interest in favor of these appellants, and impress the fund so established with an attorneys' fee of 50 per cent thereof, on a recital in their application that the services which they had performed in securing the proof of heirship upon the original hearing were done with the knowledge of appellants, and for their benefit?

The theory of appellees and the proposition advanced to support the action of the trial court in the premises are to the effect that the attorneys created, by their labors, a fund which others were entitled to claim *pro tanto,* and that, therefore, a person or persons who had taken the risk of costs and expenses of litigation should not bear the entire burden. In other words, where meritorious results were actually achieved, that those who stood idly by in an action should not be allowed to await the result, and escape all expenses if the case be lost, but if successful, share the actual benefits, by receiving their portion of this success, without contributing their share of the expense, including attorneys' fees. This is the common-fund doctrine, and is peculiarly applicable to equity jurisdiction. See *Buell v. Kanawha Lbr. Corp.* (D. C.), 201 Fed. 762; *Trustees v. Greenough,* 105 U. S. 527 (26 L. Ed. 1157); *Princeton Coal & Min. Co. v. Gilchrist,* 51 Ind. App. 216 (99 N. E. 426); *Weigand v. Alliance Supply Co.,* 44 W. Va. 133 (28 S. E. 803).

The rule finds expression and application in *Graham v. Dubuque Specialty Mach. Wks.,* 138 Iowa 456. That case involved the value of the services of an attorney in prosecuting a stockholders' suit for a breach of trust by the officers of the corporation after the refusal of the corporation to act. It was held that,

although the plaintiff-stockholders had no authority to bind the corporation by a contract to pay attorney's fees for the prosecution of the action, they were entitled, in case the suit was successful, to reimbursement from the amount recovered, for all reasonable expenses, including attorney's fees. It is said:

"The action is, to all intents and purposes, the suit of the corporation, and is for the benefit of all parties interested, to protect a trust fund; and on this ground, the stockholder is reimbursed from such fund for all proper expenditures made or liabilities incurred."

A study of the cases cited and of similar cases will disclose the rule that, where a fund is brought into a court of equity through the services of an attorney who looks to that alone for his compensation, although his interest cannot technically be called a lien, he is regarded as the equitable owner of the fund, to the extent of the reasonable value of his services.

In the case at bar, the fund was not created by any action taken or efforts put forth by the attorneys. The fund existed, and was in the hands of the administrator, awaiting legal claimants. Furthermore, the fund was not in equity; and, although a probate court will take cognizance of equitable principles, under proper circumstances (*Mock v. Chalstrom,* 121 Iowa 411), the common-fund doctrine, to which reference has been made, does not find application, under the instant facts and circumstances.

There is no allegation that the attorneys had any contract, expressed or implied, with these appellants. Though we concede (no claim to the contrary is made by either party to this application) that the movants were present in the original cause by virtual representation, this in itself would not authorize the attorneys who represented the petitioners, whose rights were adjudicated and established, to secure an ex-parte order and establish a claim and lien for attorneys' services, as prayed, especially so when they did not represent the appellants upon the original trial. The decree entered in the first instance discloses that the attorneys now claiming the right to compensation represented, as attorneys, the claimants and plaintiffs in the Diana Lehr Lurch petition, and none others.

The property rights of these appellants are involved, and due process of law requires notice of the claim and of the hear-

ing. It was an adversary proceeding, and involved the question of employment and payment for services alleged to have been rendered. No contract liability is pleaded or shown, and it is clear that an attorney cannot claim compensation for voluntary services to another, and it is denied by the appellants that the attorneys were authorized to take any action on behalf of the appellants. An unverified affirmation cannot be considered as having higher evidentiary value than the negation thereof by the adverse party. It must be remembered that the fund in question was in the hands of the administrator, although it was, for the moment, in the custody of the clerk of the court.

We deem it unnecessary to pursue the inquiry further. The right of the appellants to take this appeal is not questioned. It is urged, however, by the appellees that, since the movants attempted to secure a ruling on their motion subsequent to the appeal, and tendered evidence in support thereof, the appeal must be dismissed. We cannot concur in this viewpoint. The appellees insisted in the court below that the only rights which the appellants had, were based on their appeal to this court; and, upon the objection of appellees, the trial court ruled that it had no jurisdiction after the appeal was taken. The appellees are bound and estopped by their action in the trial court to say to the appellants now that they are precluded from prosecuting their appeal.

The supplemental order and decree entered, so far as it establishes a lien on the fund of the appellants in favor of the appellees, is void, and there must be a restoration of this fund to the hands of the clerk or administrator, to await further proceedings in the administration of the estate of William Lear. The supplemental order of the district court in the premises is— *Reversed.*

EVANS, C. J., and ALBERT and MORLING, JJ., concur.