No. 35,582

In the Matter of the Estate of F. M. Hoover, Deceased (JOHN M. HOOVER, Executor, etc., *Appellant,* v. MRS. ALICE HOOVER, *Appellee*).

(131 P. 2d 917)

Opinion on rehearing filed December 12, 1942. (For original opinion of affirmance see 155 Kan. 647, 127 P. 2d 460.)

*Ben Jones,* of Lyons, argued the cause for the appellant.

*Frank S. Hodge,* of Hutchinson, argued the cause, and *Roy C. Davis, Warren H. White, William H. Vernon, Jr., Eugene A. White,* all of Hutchinson, and *E. L. Baker,* of Lyons, were on the briefs for the appellee.

OPINION ON REHEARING

The opinion of the court was delivered by

SMITH, J.: This is an opinion on rehearing. For original opinion of affirmance see *In re Estate of Hoover,* 155 Kan. 647, 127 P. 2d 460. The opinion in this case affirming the judgment of the lower court was filed in July, 1942. The appellant filed a petition for a

rehearing. This petition was allowed and the case was reargued at the session of this court in November.

Certain points are raised by appellant which perhaps did not receive sufficient consideration in the original opinion — hence, this opinion on rehearing is being written.

Counsel for the appellant argue that the question raised on a motion for rehearing as to the constitutionality of certain provisions of the probate code is a new one. For that reason the facts will be again set out in this opinion. They are as follows:

This action originated as an application to probate a will. The will was admitted to probate and certain other proceedings were had. The widow of testator appealed to the district court from various orders of the probate court. She filed a new pleading in the district court which she entitled a statement of position or bill of particulars. The executor of deceased and certain devisees named in the will demurred to that pleading. This demurrer was overruled. They have appealed.

For the purpose of this opinion the facts are undisputed. They are as follows: F. M. Hoover entered into a contract with his wife, Alice, on October 22, 1930. This contract contained, among other things, the following provision:

"Said Alice Hoover further agrees that F. M. Hoover shall have and does have the right to make and execute any last will and testament making disposition of his property, real, personal or mixed and of whatsoever kind and wherever situated, as he may see fit and to whomsoever he may desire and hereby irrevocably consents to the making and execution of such last will and testament."

Hoover died testate on October 9, 1940. In his will, after providing for the payment of his debts, he left all his property to two grandsons. On October 11, 1940, a petition asking for the probate of the will and the appointment of an executor was filed. The statutory notice of the time and place of the hearing was given. At the time of the hearing on this petition the contract referred to above was introduced in evidence.

On October 25, 1940, the probate court admitted the will to probate and determined that by reason of the contract Alice had conveyed all her interest in the property of Hoover to him and had irrevocably consented for a valuable consideration to the making and execution of the will in question; that no attempt had been made to set this contract aside and that by reason of this contract Alice was estopped from claiming any interest in the estate of

Hoover; that she had consented to the making of the will. Judgment was entered in accordance with those findings.

On December 16, 1940, Alice filed an application in the probate court as a surviving spouse asking that certain personal property be set off to her and that the court set apart for her that portion of the estate which she was entitled to take under the laws of intestate succession; on the same date she filed a motion to set aside as much of the order of October 25 as related to the contract to which reference has been made, on the ground that she had not been notified that matters pertaining to the contract were to be presented to the court and that nothing in the petition to probate gave her any indication that the matter of her election to take under the will would be brought before the court at that time; that such findings were in direct violation of G. S. 1941 Supp. 59-2233; that the contract did not constitute an election and was invalid; that she had never made an election to take under the will; that the contract was not acted upon by the parties; the consideration recited was never paid and she had been led to believe that the contract had been destroyed; that the order attempted to deprive her of statutory allowances which were due her under G. S. 1939 Supp. 59-403; that the order violated the provisions of G. S. 1941 Supp. 59-404 because there was no express waiver of the statutory allowances provided in G. S. 1941 Supp. 59-404.

On April 28, 1941, the probate court denied Alice's motion to vacate the order of October 25, 1940, and denied the application for the statutory allowances and her election to take under the law rather than under the will.

On May 23, 1941, Alice gave notice of appeal to the district court. This notice recited that the appeal was from the order of October 25, 1940, admitting the will to probate, in which order the court found that Alice was estopped to claim any interest in the estate; that she had consented to the making and execution of the will; that it was not necessary for her to be cited to make an election thereunder; and also the order of April 29, 1941, in which the court refused to vacate a portion of the order of October 25 and refused her application for statutory allowances and denied her election to take under the law.

Pursuant to G. S. 1941 Supp. 59-2408, the district court required her to file additional pleadings, whereupon she filed a document which she called appellant's statement of position or bill of particu-

lars. In this document she recited the various steps that had been taken in the probate court about as they have been detailed here. She set out various reasons why the order of the probate court of April 28 should be set aside. To this document the executor of the estate filed a motion asking that it be dismissed because the court had no jurisdiction, and also a motion to make it more definite and certain. Without any hearing on that motion, she filed, on December 6, 1941, a new statement of position in which she again set out the various steps that have been referred to here and in which she stated that this order should be set aside insofar as it attempted to enforce the contract on the theory of estoppel or to establish her consent to the will because it was not a consent to take under the will for the reason it was not witnessed by two witnesses, as required by G. S. 1935, 22-238. She further stated that enforcement of the contract was a separate matter and the burden of enforcing it devolved upon the legatees under the will; that the consideration for the contract had failed in that the thousand dollars named in the contract as a consideration was never paid; that F. M. Hoover represented to her that if she signed the contract he would drop all idea of obtaining a divorce and that shortly prior to the time of the contract Hoover had moved to his farm with a small amount of supplies and he came to Alice and stated to her that if she would go to Lyons and sign the contract he would drop his plans to obtain a divorce and that he would live with her; that Alice did not have independent advice before signing the contract and did not read it, and within six weeks of signing the contract, December 2, 1930, Hoover filed suit for divorce; that the parties resumed marital relations immediately after signing the contract and continued to live together until the death of F. M. Hoover, and that on January 6, 1931, Hoover orally agreed with Alice to destroy the contract and as evidence of his good faith dismissed the divorce action. She further stated that the contract was not just and equitable in its provisions that her property was worth not to exceed one thousand dollars and F. M. Hoover had land at least worth ten thousand dollars and money and personal property, the extent of which was never known to her.

The executor demurred to the "statement of position or bill of particulars" filed on September 22, 1941, and the one filed December 6, 1941, and asked that the appeal be dismissed, upon three grounds: (1) The district court of Rice county, Kansas, had no jurisdiction of the person of the executor or the subject of the action; (2) neither of the documents entitled "Statement of position, or bill of

particulars" stated facts sufficient to constitute a cause of action in favor of Alice as against the executor; (3) any relief asked by Alice and any cause of action attempted to be set forth in either or both such "Statements of position or bill of particulars" was barred by the statute of limitations.

This motion to dismiss and demurrer were overruled by the trial court. Hence this appeal.

The first question with which we shall deal in this opinion has to do with the inception of these proceedings.

It will be noted that when the petition asking for the probate of the will and the appointment of an executor was filed it contained allegations as to the death of testator, the name of the widow, the amount of property left by testator, the names of the devisees in the will, that the will had been executed according to law and that testator had testamentary capacity. There was no mention whatever made of the contract, to which reference has already been made in this opinion, and no relief asked for with reference to it.

In the notice that was given the widow there was no mention of a contract or that any order would be sought from the probate court with reference to a contract.

It will be noted that the journal entry of judgment of the probate court following the hearing of this petition recites that evidence of the petitioner was introduced and the court had examined a document introduced in evidence, being a certain contract executed between F. M. Hoover and Alice Hoover. The court found that the instrument offered for probate was the last will of Hoover; that it had been duly executed and that Hoover was of testamentary capacity and was not under restraint and that it should be admitted to probate. The order of the probate court provided further that by reason of the contract Alice was estopped to claim any interest in Hoover's estate and that she had consented to the making and execution of the will. This is the first time the contract is mentioned in this record. It was not in the petition. It was not in the notice. This court in the former opinion called attention to the above facts and held that matters having to do with the contract were not properly before the probate court because of this failure of notice and the lack of any allegations with reference to it in the petition and that so much of the judgment of the probate court as related to the contract was void.

In his brief on rehearing counsel for appellant deals with this language by remarking that the contract was introduced in evidence

in the probate court in order that the probate court might know of the existence of the contract and that prima facie the surviving spouse had consented in the lifetime of the testator to the making and execution of the will.

Laying aside for the moment the question of this contract, G. S. 1941 Supp. 59-2233 provides:

"When a will is admitted to probate the court shall forthwith transmit to the surviving spouse a certified copy thereof. If such spouse has not consented to the will as provided by law, such spouse shall be deemed to have renounced and refused to elect to take under the will unless he shall have filed in the probate court an instrument in writing to accept the provisions of such a will within six months after probate of the will."

This is a clear provision that the matter of election shall not be called to the attention of the surviving spouse until after the will has been admitted to probate. Now if the executor desired to secure from the probate court a judgment that by this contract the surviving spouse had consented to the making of the will he was obliged to make this contract an issue in the probate court, so that a final adjudication could have been had as to its binding effect. It is true, as this court has said, contracts between spouses entered into freely and to which there is no equitable defense are binding. However, no adjudication as to the effect of a contract is binding until an issue as to the contract has been presented to a court and all parties to the contract have been given an opportunity to make whatever defense they may claim to have.

Courts cannot go beyond the issues of fact tendered in a case and cannot make a binding judgment upon matters that are beyond the issues.

In *Charles v. White*, 214 Mo. 187, 112 S. W. 545, the court said:

"A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it 'would seem, received much judicial consideration. And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment. It is impossible to concede that, because A and B are parties to a suit, a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not. Persons by becoming suitors do not place themselves for all purposes under the control of the court, and it is only over these particular interests which they choose to draw in question that a power of judicial decision arises." (p. 206.)

In 15 R. C. L. 854, the rule is laid down as follows:

"Therefore, where a court enters a judgment or awards relief beyond the prayer of the complaint or the scope of its allegations an excessive relief is not merely irregular but is void for want of jurisdiction, and is open to col-

lateral attack. For example, where in a suit, the sole object of which is the assignment of a widow's dower in land mentioned in the bill, the court not only assigns the dower, but also, *sponte sua*, decrees a sale of the residue of the land, it plainly exceeds its jurisdiction, and its decree is void, and may be collaterally attacked."

In 1 Freeman on Judgments, 738, the rule is stated as follows:

"A judgment outside the issues is not a mere irregularity, but is extra-judicial and invalid."

See, also, Black on Judgments, 268; also, *Seamster and Als. v. Blackstock and Als.*, 83 Va. 232; also, *Sache v. Wallace*, 101 Minn. 169; also, *McFadden et al. v. Ross et al.*, 108 Ind. 512.

It will not do to say that the provision as to the contract in the judgment was merely incidental to the probate of the will. The executor sought to secure a right for himself and to deprive the widow of a right by the provision of the judgment of the probate court which he induced the court to make with reference to this contract. Such a thing cannot be done since no reference was made to the contract in the pleadings or in the notice. Hence, so much of the judgment of the probate court in its first order, in which it was held that the widow had consented to the will by this contract, was void and a nullity.

This opinion might well stop here. The executor would then be left to bring the matter of the contract to the attention of the probate court by appropriate proceedings. There pleadings would be filed making allegations with reference to the contract and the widow would be given notice that the binding effect of the contract was to be adjudicated. However, this court has seen fit in view of what transpired later in the probate court to deal with other questions. It has been pointed out in this opinion that within the nine months' time provided the widow appealed from the order admitting the will to probate, or as much of that order as referred to the contract. We have demonstrated that she did not need to appeal from that part of the order because that much of it was void, was never of any effect and could have been attacked by her at any time. However, she took other steps. She filed a motion to set aside the order which has been discussed already and also a motion for certain property to be set aside to her, and in this motion she set out certain equitable defenses she claimed to have to this contract. The probate court heard these motions and applications and denied them and within due time the widow appealed to the district court. There the district court, acting pursuant to G. S. 1941 Supp. 59-2408, re-

quired her to file additional pleadings, whereupon she filed what she denominated a bill of particulars or statement of position in which she recited all the various steps to which reference has already been made.

The executor filed a demurrer to this bill of particulars and a motion to dismiss the appeal. This was overruled and is the appeal which we now have.

G. S. 1941 Supp. 59-2408 provides, amongst other things, as follows:

"Upon the filing of the transcript the district court, without unnecessary delay, shall proceed to hear and determine the appeal, and in doing so shall have and exercise the same general jurisdiction and power as though the controversy had been commenced by action or proceeding in such court and as though such court would have had original jurisdiction of the matter."

The ultimate point at issue between these parties at the present time is the binding effect of the contract. As the pleadings now stand, the executor can make whatever answer to the pleading filed by the widow he deems advisable as to the binding effect of the contract upon the widow, and the district court can proceed to hear the cause and make a final adjudication. For that reason, we have seen fit to decide this case so that the matter will be tried out upon the bill of particulars as now filed by the widow and upon such answer thereto as may be made by the executor, rather than sending it back to the probate court for whatever action the executor might see fit to take with reference to the contract there. The only difference is that in this case, as the matter now stands, the widow has taken the initial steps toward bringing the contract into the case so that it may be adjudicated, whereas under the statutes it was the obligation of the executor to bring this contract to the attention of the court by proper proceedings.

Here is where the executor makes a vigorous argument in this court, however. He says that the probate court had no jurisdiction to make a decision as to the binding effect of this contract because such a decision would involve the exercise of equitable jurisdiction— hence no jurisdiction could be given the district court by appeal to adjudicate the binding effect of it. He makes this argument in spite of the fact that in the first proceedings in which he initiated this case, as has been pointed out, he sought to have the probate court make a binding adjudication against the widow as to the contract. He is now contending that this adjudication was binding even while he is insisting, on the other hand, that the probate court had no

jurisdiction to adjudicate the binding effect of it when that question was raised by the widow.

The executor refers first to article 3, section 1, of the Kansas constitution. That article is as follows:

"The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law; and all courts of record shall have a seal to be used in the authentication of all process."

He further quotes article 3, section 8, which reads as follows:

"There shall be a probate court in each county, which shall be a court of record, and have such probate jurisdiction and care of estates of deceased persons, minors, and persons of unsound minds, as may be prescribed by law. . . ."

He argues that by section 8 the constitution provides that probate courts shall have probate jurisdiction in care of estates of deceased persons, minors and persons of unsound mind and shall have jurisdiction in cases of habeas corpus. His argument is that pursuant to this provision the jurisdiction that can be conferred on the probate courts is as enumerated in that section and no other jurisdiction can be given. He fortifies that by reference to the constitution of Ohio and the proceedings of the Wyandotte convention where it was determined that the Ohio constitution should be the model for the judiciary in writing our constitution. He points out that the Ohio constitution provided that "probate courts should have certain jurisdiction and such other jurisdiction . . . as may be provided by law." He points out that the above provision was omitted from our constitution purposely.

The provision of our probate code which prescribes the jurisdiction and general powers of probate courts is G. S. 1941 Supp. 59-301. That statute in part provides as follows:

"The probate courts shall be courts of record, and, within their respective counties, shall have original jurisdiction:

. . . . . . . . . . . . .

"(3) To direct and control the official acts of executors and administrators, to settle their accounts, and to order the distribution of estates.

. . . . . . . . . . . . .

"(5) To determine the heirs, devisees, and legatees of decedents.

. . . . . . . . . . . . .

"(11) Such other jurisdiction as may be given them by statutes pertaining to particular subjects.

"(12) And they shall have and exercise such equitable powers as may be necessary and proper fully to hear and determine any matter properly before such courts."

Note the provisions of subdivision 12. By that subdivision probate courts are given the right to exercise such equitable powers as may be necessary and proper in hearing and determining the matters properly before the court.

Now the matters properly before it are those that deal with the enumerated powers in the preceding subsections, that is, to admit wills to probate with reference to matters testamentary, controlling the acts of the executors, administrators, winding up partnership estates, determining the heirs of decedents, devisees and legatees of decedents, habeas corpus cases, trusts and powers created by wills, to appoint trustees to estates, to hold inquests respecting insane persons and such other jurisdiction as may be given them by statute pertaining to particular subjects. All of the above enumerated powers relate to what has generally been held to be probate jurisdiction. They all pertain to the care of estates of deceased persons or matters incidental thereto. Hence the provision that gives probate courts equitable powers refers to equitable powers that are necessary to adjudicate matters that relate to estates of deceased persons, minors, insane persons, convicts, etc.

In *Erwin v. Erwin*, 153 Kan. 703, 113 P. 2d 349, this court considered the question of whether an estate should be distributed according to the law of descent and distribution or whether it should be distributed under the terms of a written contract of the heirs. The validity of this contract was not questioned. However, this court pointed out that the property, which was the subject of the contract, was the property of an estate and that the estate was in the process of administration in a court vested with the jurisdiction to settle and distribute the estate. In this case the court said:

"The real issue, and the only issue, was the same in the district court as it was in the probate court, namely, whether the probate court had jurisdiction to distribute the estate in conformity with the contract of family settlement. The district court properly decided the probate court was vested with such jurisdiction. The issue was not changed by the intervening petition which was filed by the widow in the district court pursuant to statutory authority. It set forth the contract and narrated what had transpired in the probate court. It may have contained some surplusage, but it was good as against a general demurrer." (p. 708)

*Foss v. Wiles*, 155 Kan. 262, 124 P. 2d 470; *Dixon v. Fluker*, 155 Kan. 399, 125 P. 2d 364; *Yeager v. Yeager*, 153 Kan. 734, 129 P. 2d 242; and *Swisher v. Bouse*, 155 Kan. 797, 130 P. 2d 565, are all cases which interpreted the above provision of the probate code. In them

all we held that subsection 12 conferred on probate courts such equitable powers as might be necessary and proper fully to hear and determine any matter properly before it. They were all placed upon the ground that the decision of the question raised by the action to enforce a contract of a decedent to convey or leave property at his death was necessary before the estate of the deceased person could be administered. That is the situation here. The estate of the decedent in this case could not properly be administered until the binding effect of this contract was adjudicated. Indeed, the executor seemed to have realized that by seeking an adjudication to this effect at the inception of these proceedings. That being true, the decisions in the above cases apply to this case and the probate court did have jurisdiction to pass upon the validity and binding effect of this contract.

In the above cases the question of the constitutionality of this section of the probate code was not passed upon. Due to the vigorous arguments made by the executor that the above provision is not constitutional we shall examine that question.

Referring for a moment to the provision of the constitution of this state which provides for the jurisdiction of probate courts, we find that the constitution says that probate courts shall have such probate jurisdiction and care of estates of minors, deceased persons, persons of unsound mind, convicts, etc., as may be provided by law. We do not have to go much further than the above language to see that the broad interpretation of it means that where the binding effect of a contract must be determined before an estate can be administered, jurisdiction to determine such questions may be conferred on probate courts by law.

The mere fact that in determining the validity of this contract the probate court must exercise equitable powers does not make the provision void under the constitution. There is nothing new in the provision that probate courts in passing on matters that have to do with the handling of estates may exercise equitable powers.

In *Johnson v. Superior Court*, 102 Cal. App. 178, 283 Pac. 331, the court held:

"Probate court has power to pass upon equitable issues involved in determining questions that may arise within its jurisdiction, in accordance with sections 1664 and 1665 of the Code of Civil Procedure which give it the power and duty to determine heirship, all interests, and all claims of interest in an estate, if they are not adverse thereto." (Syl. ¶ 4.)

In *Pollock v. Cantlin*, 253 Ill. App. 229, 234, the court held:

"County or probate courts in the settlement of estates are vested with equitable as well as legal powers and in the adjustment of the accounts of executors, administrators and guardians, the county court has equitable jurisdiction and may adopt equitable forms of procedure." (p. 234.)

In the case of *In re Estate of Lear*, 204 Iowa, 346, 213 N. W. 240, the court held:

"Probate court will take cognizance of equitable principles under proper circumstances." (p. 354.)

In the case of *Oxenham v. Mitchell*, 160 Md. 269, 153 A. 71, the court held:

". . . The jurisdiction of the orphans' court is administered upon equitable principles. . . . And it is well settled in equity that a conveyance, whatever may be its form, if it be taken as a security for an existing debt or a contemporaneous loan, will be treated as a mortgage, so as to permit the debtor and those deriving title through him, to redeem the land from the operation of the instrument employed." (p. 275.)

See, also, *Mitchell v. Weaver*, 242 Mass 331; *Coffey v. Rady*, 267 Mass. 301, 166 N. E. 833; *In re Estate of Frerichs*, 120 Neb. 462, 233 N. W. 456; *Curlee Clothing Co. v. Boxer* (Mo. App.), 51 S. W. 2d 894.

The executor argues that to hold that under our constitution jurisdiction can be given probate courts to exercise equitable powers will make it possible for any equity case to be brought in the probate court. He points out that proper machinery for taking care of equity matters has not been lodged with the probate courts. This does not necessarily follow. The equity powers that are given probate courts by G. S. 1941 Supp. 59-301, as we pointed out in the cases to which reference has already been made, have to do with matters properly before such courts. That is, matters which are generally conceded to be under their jurisdiction, such as handling estates and taking care of incompetents and habeas corpus cases.

After an examination of the authorities cited by the executor and the able argument of the counsel, we hold that the section just referred to does not violate the constitution and does confer upon probate courts such equity powers as are necessary to decide the question as to the binding effect of such contracts as we have here, that the probate court had jurisdiction to adjudicate its binding effect, and since it decided the question against the contention of the widow she had a right to appeal from the decision of the probate

court, and the district court on appeal had jurisdiction to determine and finally adjudicate the questions raised.

The opinion of affirmance is adhered to.

ALLEN, J. (dissenting): After the original opinion in this case was handed down, the case of *Yeager v. Yeager,* 155 Kan. 734, 129 P. 2d 249, was decided. For the reasons set forth in my dissenting opinion in the Yeager case I am unable to concur with the majority opinion in this case.