Irene SCHMIDT, Executrix of the Estate
of Carl H. Schmidt, Deceased,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. W–3701.

United States District Court
D. Kansas.

Jan. 25, 1968.

Jochems, Sargent & Blaes, Wichita, Kan., for plaintiff.

Gioria Ben Horin, Tax Division, Dept. of Justice, Washington, D. C., Bernard Borst, Asst. U. S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM OF DECISION

THEIS, District Judge.

This action arises under the Internal Revenue laws of the United States, and is here now on cross-motions for summary judgment. The plaintiff's complaint prays for recovery of estate taxes and interest thereon assessed against the Estate of Carl H. Schmidt pursuant to 26 U.S.C.A. § 2001, as amended. The Court finds, as a preliminary matter, that it has jurisdiction of the subject matter and the parties to the action. The facts in this matter have been stipulated to and are as follows:

1. This is a civil action for the recovery of $10,699.99 in federal estate tax and interest allegedly erroneously and illegally assessed and collected from the plaintiff, and statutory interest.

2. The Court has jurisdiction over the parties and subject matter under Title 28, United States Code, Sec. 1346(a).

3. Carl H. Schmidt (hereinafter "decedent") died testate on April 20, 1961, a resident of Caldwell, Kansas.

4. The decedent and his wife, Irene M. Schmidt, had executed their Joint and Mutual Last Will and Testament on June 19, 1957.

5. On May 15, 1961, decedent's widow, as co-executrix, filed a Petition for Probate of Will in the Probate Court of Sumner County, Kansas.

6. The will was admitted to probate on June 14, 1961, the date on which was filed the probate court's Order Admitting Will to Probate.

Letters Testamentary were issued on June 27, 1961, to Irene M. Schmidt and Donald Schmidt, decedent's elder son, as co-executors.

7. On July 20, 1962, the federal estate tax return on behalf of decedent's estate was filed with the District Director of Internal Revenue, Wichita, Kansas. On the return, there was reported a total gross estate of $232,433.73, total allowable deductions of $164,293.04, including a marital deduction of $68,140.68, a taxable estate of $8,140.69, and a net estate tax payable of $369.84. A remittance in the latter amount accompanied the return.

8. Also on July 20, 1962, the inventory and appraisement for the estate was filed in the probate court as required by Kansas law. K.S.A. 59–1201 et seq.

9. On July 30, 1962, the decedent's widow filed in the probate court a document entitled Revocation of Joint and Mutual Will, Revocation of Consent Thereto, Election of Surviving Spouse to Take by Intestate Succession, and Application for Relief Under G.S.1961 Supp., 59–2233 and for Approval of Such Revocations and Election.

10. On July 30, 1962, the Probate Court filed its Order for Hearing setting the aforementioned Revocation of Joint and Mutual Will, Revocation of Consent Thereto, Election of Surviving Spouse to Take by Intestate Succession, and Application for Relief Under G.S.1961 Supp., 59–2233, and For Approval of Such Revocation and Election for hearing on August 22, 1962, at 10:00 o'clock a. m. Notice of Hearing was duly filed. Proof of Publication was duly filed on August 21, 1962.

11. On August 22, 1962, the probate court entered its Order Approving Revocation of Joint and Mutual Will, Revocation of Consent Thereto, Election of Surviving Spouse to Take by Intestate Succession and Granting Relief Under G.S.1961 Supp., 59–2233,

which order was filed on August 25, 1962.

12. On January 7, 1964, after audit of the estate tax return, the Commissioner mailed to the executors of decedent's estate a notice of deficiency in the amount of $9,604.93. In addition to several adjustments not now in controversy, the Commissioner decreased the claimed marital deduction by $60,554.91, from $68,140.68 to $7,585.77.

13. The estate thereupon paid the deficiency, with interest, and on April 7, 1965, filed a timely claim for refund in the amount of $9,235.09. On June 20, 1966, the estate filed a waiver of statutory notification of claim disallowance, and this suit was thereafter timely instituted.

Within the scope of the stipulation, but not set forth specifically therein except as a part of the will as an exhibit, was that provision of the will numbered XXII, wherein it was stated by the testator:

"This will has been arrived at by agreement between us and shall be subject to revocation by request of either party. Each of us hereby consents to the same and accepts all provisions hereof in lieu of all other constitutional or statutory rights, interests or allowances whatsoever."

This provision was a part of the principal will and not a separate part at the end of the will in the usual form of most consents. The will itself contained twenty-two separate paragraphs and made a devise or legacy of a proportionate part of the testators' estates to each of their children in an overall manner which reflects apparent consideration of the extent and evaluation of their estates and the close family relationships.

An additional fact to consider under one of plaintiff's contentions is the phraseology of Paragraph 4 of the "Petition for Probate of Will," filed by plaintiff in the Probate Court of Sumner County, Kansas, on May 15, 1961, which read as follows:

"4. The petitioner, Irene M. Schmidt, consented to the will in writing and the same is the joint and mutual last will and testament of the decedent and this petitioner and petitioner accepts the provisions outlined in said will in lieu of any other constitutional or statutory rights."

Reduced to its simplest terms, this lawsuit turns upon the correct interpretation of the passing and disposition of the property of Carl H. Schmidt, deceased. If, under a correct interpretation of Kansas law, the decedent's widow, and the plaintiff here, Irene M. Schmidt, were required to take under the will, then the Government's contention of the computation of the marital deduction for federal estate tax purposes is correct and must be sustained by the judgment of this Court. On the other hand, if the contention of the surviving widow, as plaintiff here, is correct, that she made a proper election to take under the law of descent and distribution and against the will of her husband, then her contention as the fiduciary representative of the estate is correct as to the proper computation of the marital deduction under the federal estate tax law. To decide the issue before the Court it will be necessary to consider the language and interpretation of Sections 59–602, 59–603, and 59–2233 of Kansas Statutes Annotated.

Originally, the principal thrust of the plaintiff's case and argument was to the effect that the adjudication by the Probate Court of Sumner County, Kansas, on August 22, 1962, when it entered its "Order Approving Revocation of Joint and Mutual Will, Revocation of Consent Thereto, Election of Surviving Spouse to Take by Intestate Succession, and Granting Relief Under G.S.1961 Supp. § 59–2233," made the Government's contention unsound and barred its action solely for the reason that the probate court had entered such an order and its adjudication could not be questioned by

a federal court under existing precedents for judicial decision.

It is now, however, conceded by both sides that this contention is out of the window, in view of the two recent decisions by the United States Supreme Court in the companion cases of *Commissioner of Internal Revenue v. Estate of Bosch, and Second National Bank of New Haven v. United States,* both decided June 5, 1967, and now officially reported at 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886.

The identical central issue in *Bosch* and *Second National Bank* cases, both estate tax disputes involving marital deduction under § 2056, was, in the words of the Supreme Court:

"Whether a federal court or agency in a federal estate tax controversy is conclusively bound by a state trial court adjudication of property rights or characteristics of property interests when the United States is not made a party to such proceeding?"

The high court answered this question in the negative, stating:

"We hold that where the federal estate tax liability turns upon the character of a property interest held and transferred by the decedent under state law, federal authorities are not bound by the determination made on such evidence by a state trial court."

These cases went on to hold that in evaluating the efficacy of a state court judgment, as it affects property rights, from which stem federal tax consequences, the federal court must embark on an independent investigation of the state law as determined by the highest court of the state, and follow such interpretation if it exists, or make its own interpretation if there be no state decisions.

The attorneys for both sides recognize these holdings and the contention of the plaintiff now is that the order of the probate court was a valid one in accordance with the state law as interpreted by the Kansas Supreme Court. In this connection they assert varied contentions. Plaintiff claims that the consent of the wife to the joint mutual will was improper and illegal because it was not separate and apart from the main body of the will, and for the further reason that the will, as to the consent portion, also gave each testator the power of revoking the instrument, ergo, the revocation of the will by the widow, as approved by the probate court, revoked any consent she gave to the will.

Turning our attention to these contentions, it is the firm opinion of this Court that the consent to the will contained in Paragraph XXII thereof, was a valid and binding consent, regardless of the form or place in the will. It was properly attested to in the statutory form and it was not necessary that it be appended at the end as a separate entity, in view of the fact that the original will purported to be a joint mutual instrument.

The contention of the plaintiff that the power to revoke the will, reserved to both testators, thereby destroyed the consent which the widow had made to the will, is not a sound one, for the reason that counsel confuses "revocation" and "consent." Revocability relates to the right of a testator to revoke or nullify his or her own will as a maker of the instrument; and consent connotes the right of a spouse as a beneficiary of the will to be bound by the provisions of it as a donee. Aside from the fact that it might very well be soundly argued that the power of revocation of the will as to either testator ended at the moment the first testator died, certainly such power of revocation, assuming it survived the death of the first testator, would go only to the dispositive provisions of the will. However, "consent" implies agreement to the provisions of the first will and such consent is binding unless it be claimed and shown that it was not freely and understandingly made. No such claim exists here. Stated differently, the surviving spouse, as a joint testator of the first will, could make her own new will as to how she wished to dispose of any property to

which she might have legal title or power of disposition, but she made a valid and binding consent to the first will insofar as it reflected the testamentary direction of her predeceased husband as testator.

This Court finds that Paragraph XXII constituted a valid and binding consent within the contemplation of G.S. Kan.1961 Supp., Chapter 59, and existing decisions of the Kansas Supreme Court.

■ In reaching a decision here favorable to the defendant Government, it matters not whether we say that this plaintiff effectively consented to the will at the time it was executed during the lifetime of the joint testator, or whether it is assumed that no valid consent was ever made to such will. It is contended here that an election to take under the will was filed at the time of and as a part of the petition for probate of the will. However, within the provisions of K.S.A. § 59–2233, such an act is not within the contemplation or scope of that statute, which plainly provides that "if such spouse has consented to the will, as provided by law, such consent shall control; *otherwise such spouse shall be deemed to have elected to take under the testator's will unless he shall have filed in the probate court, within six months after the probate of the will, an instrument in writing to take by the laws of intestate succession.*" (Emphasis added.)

It would appear, based on the authority of *In re Estate of Jones*, 179 Kan. 744, 298 P.2d 230, interpreting the then applicability of G.S.Kan.1949, § 59–2233, that this plaintiff is incontrovertibly precluded from electing to take under the statute of descent and distribution, by the plain stipulated fact that the will here was admitted to probate on June 14, 1961, and the purported "election of surviving spouse to take by intestate succession," was *not* filed until July 30, 1962, long after the six-month period.

■ To reiterate, this plaintiff is precluded upon either of two courses of reasoning: one, if her consent to the will of the decedent, executed at the time the will was made, is valid, the statute plainly says, "such consent shall control." On the other theory of reasoning, if it be said that there was no valid consent to the will, then it is plainly necessary, under the wording of the statute, that she file within six months after the probation of the will "an instrument in writing to take by the laws of intestate succession." No such instrument was ever filed in this estate during the six-month period. However, plaintiff further contends that Paragraph 4 of the petition to probate was, in accordance with the third and fourth sentences of § 59–2233, an initial election which somehow tolled the running of the six-month provision until thirty days after the inventory and appraisement in the estate was filed, and having filed such "election" within the first six months, plaintiff's formal written election filed on July 30, 1962, and subsequently approved by the probate court in its order of August 22, 1962, was timely and effective. The provision in the petition for probate to the effect that the "petitioner accepts the provisions outlined in the said will in lieu of any other constitutional or statutory rights," cannot be said to be an election under § 59–2233. It was at most a reaffirmation of the consent in the will— not an election. A proper election, as stated above, contemplates solely that such election must be to *take under the law* and *against the will.* Furthermore the Kansas cases hold that the election procedure provided under § 59–2233 is *after* the will has been admitted to probate. *In re Estate of Hoover*, 156 Kan. 31, 131 P.2d 917. Paragraph 4 of the petition to probate, therefore, is not an election within the meaning of § 59–2233.

■ Applying the holding of the United States Supreme Court in the *Bosch* and *Second National Bank* cases, supra, the order of the Probate Court of Sumner County, Kansas, permitting the widow to take by intestate succession was in contravention of Kansas law, and not binding upon the defendant United

States in computing the federal estate tax obligation of the Estate of Carl H. Schmidt, deceased.

The motion of the defendant United States for summary judgment herein is sustained, and the plaintiff's motion for summary judgment is overruled. Prevailing counsel shall prepare a journal entry of judgment in accordance with this decision.